## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       Plaintiff,

v.

AUDLEY MURPHY CRABLE,

       Defendant.

Case No. 16-40101-01-DDC

## MEMORANDUM AND ORDER

Before the court is defendant Audley Murphy Crable's Motion to Exclude. Doc. 66. Mr. Crable contends that the government failed to comply with Federal Rule of Criminal Procedure 16(c) when it provided extraction data from a cellphone seized from Mr. Crable's house under a search warrant; warned defense counsel that the data taken from the phone might be corrupted and contain a virus; but then extracted inculpatory data from the cellphone just five days before trial began. As a result, Mr. Crable requests the court exclude all evidence extracted from the cellphone.

The government has submitted a response in opposition to Mr. Crable's motion. Doc. 68. The parties also submitted a Joint Stipulation of Facts, (Doc. 67), and the court heard oral argument on the motion on September 18, 2018. The court now is ready to rule on defendant's motion. For reasons explained below, the court finds that the government did comply with Rule 16(c), but failed to comply with the court's then-current Trial Order. Thus, the court denies Mr. Crable's Motion to Exclude, but the court grants his oral motion for a 60-day continuance and sets a status conference for October 1, 2018, at 9:00 o'clock a.m.

**I.      Facts[1]**

On November, 19, 2011, a single assailant robbed Mo's Express, located at 810

Southeast 15th Street, Topeka, Kansas.  The assailant shot both clerks and stole money from the

store.  Doc. 1 at 1–3.

On December 29, 2011, Topeka Police Department Detective Daryl Ludolph applied for

and secured a state warrant, authorizing a search of Mr. Crable's residence for a suspected crime

unrelated to the robbery of Mo's Express.  Officers seized, among other items, six cellphones

from Mr. Crable's residence.

About seven months later, in July 2012, Topeka Police Department Detective George

Henley applied for and received a state court-issued warrant to search the six cellphones seized

from Mr. Crable's residence.  The search yielded no readable information, and it appeared that

the data extracted from one or more of the cellphones was corrupted.

On November 16, 2016, a federal grand jury indicted Mr. Crable on one count of Hobbs

Act robbery and one count charging that he used, carried, brandished, or discharged a firearm in

furtherance of a crime of violence.  Doc. 1 at 1–3.  The government, under obligations imposed

by the Federal Rules of Criminal Procedure, began to distribute discovery to Mr. Crable's

counsel shortly after arraignment on March 7, 2017.  At that time, the Office of the Federal

Public Defender represented Mr. Crable.  Doc. 6 at 1.  Later, in 2017, the court appointed Mr.

Crable's present counsel to replace the federal defender.  *Id.*

The government continued disclosing evidence after Mr. Crable's arraignment.  On

August 17, 2017, Mr. Crable's counsel emailed the government and requested, among other

items, "[c]ellphone extraction reports for 6 phones seized during search of Crable's 14th St.

---

[1]      The parties submitted a Joint Stipulation of Facts, (Doc. 67), which the court adopts as the basis for its ruling in this Order.

residence on 12/29/11." The same day, the government's counsel responded that he would "get the [FBI] agents working on it now."

Sometime before October 25, 2017, the government provided a computer disc to Mr. Crable's counsel that contained the cellphone information. But, the government suspected that the media storing the cellphone information was corrupted and possibly contained a virus that might damage any computer used to access the data. The government's counsel warned Mr. Crable's counsel about his concerns when handing over the disc, or shortly thereafter. At that time, the government did not intend to use information generated from any of the cellphones at trial.

But, on or about September 6, 2018, FBI agents again tried to open the disc, and this time, they succeeded. That same day, the government notified Mr. Crable's counsel that its agents had extracted some information from the disc containing the cellphone data—specifically, two photographs stored on one of the cellphones. The government then applied for and received a search warrant from a federal magistrate judge. With its warrant, the government attempted a new and more robust extraction on one of the cellphones, which derived text messages and phone logs. The government provided the new extraction report to defense counsel on September 7, 2018.[2]

---

[2] The court's Order today encompasses only the first two photographs, text messages, and phone logs extracted from LG T-Mobile Cell Phone Model LG-P509 Serial Number 010KPAE193624. At the status conference held on September 6, 2018, the government had extracted just two photos, text messages, and phone logs from one cellphone. But, the government extracted a third photo from the cellphone after the status conference. And, the government advises, it intends to run extractions on the other five phones taken from Mr. Crable's home. Thus, the court is careful to reiterate that this Order does not prevent it from deciding any challenge that Mr. Crable might present against the government's use of any additional information extracted from the six cellphones.

**II.    Discussion**

> **A.    The Government Did Not Violate Federal Rule of Criminal Procedure 16, But It Did Violate the Court's Trial Order.**

As an initial matter, the government owed a duty to disclose the existence of the additional evidence promptly because the photographs, text messages, and phone logs are evidence under Rule 16. Under Rule 16(a)(1)(E), "[u]pon defendant's request, the government must permit the defendant to inspect and to copy . . . documents, data, photographs . . . if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant." Fed. R. Crim. P. 16(a)(1)(E).

Here, the two cellphone photographs, text messages, and phone logs fall well within the bounds of Rule 16(a)(1)(E). Long ago, defendant requested "Cellphone extraction reports for 6 phones seized during search of Crable's 14th St. residence on 12/29/11." Doc. 67 at 3. The government extracted limited data from the phone, copied this data, and provided it to defendant on a CD. *Id.* Also, the item is material to preparing the defense—allegedly, this data inculpates Mr. Crable. And, the government intends to use this data in its case-in-chief at trial. Doc. 66 at 3. In sum, the cellphone extraction data is subject to inspection under this rule for several reasons.

Because the cellphone extraction data falls within Rule 16's scope, the next issue is whether the government complied with Rule 16's disclosure requirements. Under Rule 16(c), "a party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if: (1) the evidence or material is subject to discovery or inspection under this rule; and (2) the other party previously requested, or the court ordered its production." Fed. R. Crim. P. 16(c). The parties stipulate that defendant received the cellphone

extraction CD nearly a year ago—sometime before October 25, 2017. Doc. 67 at 3. And, the

parties agree that the allegedly inculpatory data existed on the CD when defendant received it

from the United States. *See id.*

But, defendant argues that the government's eleventh-hour discovery of new evidence

"violates any standard of fair play or substantial justice" because, in previous conversations, the

government told defendant that it did not intend to use, at trial, any media taken from the

cellphones. Doc. 66 at 4. The government also told defendant that it planned not to open the

cellphone extraction CD because it contained a virus and warned defendant to open his copy of

the CD at his own risk. *Id.* at 3.

The government disagrees with defendant's portrayal of the issue. Although the

government discovered new data on the CD days before trial, the government had delivered a

copy of the CD to defendant some time before October 25, 2017. Doc. 67 at 3. So, according to

the government, it delivered the evidence to Mr. Crable promptly after his counsel requested it.

The government also contends that although it warned the defendant about a potential virus,

nothing prevented defendant from having a third party or computer analyst help him determine if

the disc was in fact readable. Doc. 68 at 3.

The court agrees that the government disclosed the original cellphone extraction CD

promptly under Rule 16. Nonetheless, even though the government notified defendant of

additional data found on the CD, this disclosure violated the court's Trial Order. The

government had a duty to comply with the then-current Trial Order for the case—*i.e.*, the court

ordered the parties to file their witness and exhibit lists no later than 12 days before trial. Doc.

52 at 1. The government's exhibit list did not account for the new data the government planned

to use in its case-in-chief because the government retrieved new photos, text messages, and

phone logs on September 6, 2018, five days before trial. Doc. 67 at 3; Doc. 61. Thus, the court

finds that the government violated the Trial Order, and the court must impose an appropriate

sanction.

**B.      Applying the *Wicker* Factors, the Court Finds a Continuance is the Least Severe Sanction Necessary.**

Mr. Crable requests that the court, as a sanction, exclude all contents of the cellphone at

his upcoming trial; or, in the alternative, he requests a continuance to retain his own digital

forensics expert to review the additional media; assess any new government claims or assertions;

and renew his motion to dismiss the case on preindictment delay grounds. Doc. 66 at 5.

The government contends that no sanction is necessary because no Rule 16 violation

occurred. Doc. 68 at 4. But, the government concedes, if the court found the government failed

to comply with the Trial Order, then a continuance would cure any prejudice defendant may have

suffered. *Id.* As discussed above, the court finds that no Rule 16 violation occurred, but the

court must impose an appropriate sanction because the government violated the court's Trial

Order.

A party may satisfy its Rule 16 obligations but still fail to meet disclosure deadlines

imposed by the court. When a party fails to comply with a scheduling order, the court has broad

discretion to craft an appropriate sanction. *See United States v. Yepa*, 608 F. App'x 672, 677

(10th Cir. 2015). So, the court may order the non-complying party to produce the discovery,

grant a continuance, or prohibit the party from introducing the undisclosed evidence. *United*

*States v. Wicker*, 848 F.3d 1059, 1060 (10th Cir. 1988) (citing Fed. R. Crim. P. 16(d)(2)). The

court must impose "the least severe sanction that will accomplish prompt and full compliance

with the court's discovery order" in light of three factors: (1) the reasons the government

delayed producing the requested materials, including whether or not the government acted in bad

faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance. *Id.* at 1060–61. These factors "'merely guide the district court and do not dictate the bounds of the court's discretion.'" *Yepa*, 608 F. App'x at 677 (quoting *United States v. Russell*, 109 F.3d 1503, 1511 (10th Cir. 1997)). But, the Tenth Circuit has observed that "[i]t would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." *United States v. Golyansky*, 291 F.3d 1245, 1249 (10th Cir. 2002).

### 1. The Government's Reason for Delay

First, the court finds no evidence of bad faith by the government. Indeed, the government provided the cellphone extraction disc to Mr. Crable's counsel 11 months ago, and it contained the allegedly inculpatory data. Although the government warned Mr. Crable's counsel that the CD might contain a virus, no evidence suggests the government did so intending to disadvantage defendant. And, when the government discovered the new photos on September 6, 2018, the government notified Mr. Crable's counsel immediately. Doc. 67 at 3. Last, Mr. Crable's counsel did not argue that the government had acted in bad faith. Thus, while the timing of the disclosure and the government's intent to use this data in its case-in-chief violated the court's Trial Order, this alone does not constitute bad faith.

While bad faith is absent, "negligence alone can justify excluding evidence." *United States v. Yepa*, 608 F. App'x 672, 678 (2015). As the Tenth Circuit explained in *Yepa*, the decision to exclude evidence in *Wicker* resulted from the prosecution's single request that an expert mail a report to the defense, but then failed to follow up. These events led to the report's disclosure to the defense only a few days before trial. *See id.*

Here, the government's witness explained that the FBI either could attempt to extract data from the potentially virus-infected disc on a computer connected to the FBI network, or on a computer unconnected to the FBI network. The witness explained that the agents attempted to use the computer unconnected to the FBI network, just five days before trial, because they wanted to try and see what would happen. Such an eleventh-hour search is a questionable maneuver, especially because the agents had access to a computer unconnected to the FBI network well before the trial date. For the reasons explained below, the court ultimately concludes that a continuance is the least severe sanction necessary; but, neither the government nor its agents should think its practice here was ideal. It was not.

### 2. The Extent of Prejudice to the Defendant

Turning now to the second factor, the court finds that the government's disclosure of new evidence just five days before trial prejudiced defendant. To establish prejudice, the court "must determine that the delay impacted the defendant's ability to prepare or present its case." *Golyansky*, 291 F.3d at 1250. The government had represented to defendant previously that it did not intend to use any media from the cellphone. Doc. 67 and 3. And the government decided to change its position just days before trial—a decision that failed to conform with the court's Trial Order. *Id.* at 3–4. Considering the government's last-minute actions and its intent to use that discovery in its case-in-chief, the court finds that the government prejudiced defendant because it hindered defendant's ability to prepare his defense.

### 3. The Feasibility of Curing the Violation with a Continuance

Third, the court considers the feasibility of curing the violation with a continuance. A continuance is particularly apt before trial begins. *See Golyansky*, 291 F.3d at 1250 (holding that a continuance, in part, was preferred because "defendants have not yet empaneled a jury or

committed themselves through opening statements or cross-examination to a particular defense"). Similarly, Mr. Crable's trial has not yet begun. And, Mr. Crable's counsel asserts that with a continuance he could retain a digital forensics expert to review the new media provided; assess any new government claims or assertions; and renew his motion to dismiss the case on preindictment delay grounds. Doc. 66 at 5. A continuance will allow Mr. Crable to pursue these defense measures. Thus, considering the Tenth Circuit's directive that the court impose the least severe sanction, the court concludes that a continuance is both adequate and necessary.

## III. Conclusion

For the reasons explained above, the court denies Mr. Crable's Motion to Exclude, but the court does find that a continuance is necessary to cure the government's violation of the court's Trial Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Crable's Motion to Exclude (Doc. 66) is denied.

**IT IS FURTHER ORDERED THAT** a continuance of 60 days is granted and a status conference between the parties is set for October 1, 2018, at 9:00 o'clock a.m.

**IT IS SO ORDERED.**

**Dated this 27th day of September, 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
